PHILIP J. TRENCHAK, ESQ.
Nevada State Bar No. 9924
Mullins & Trenchak, Attorneys at Law
1614 S. Maryland Parkway
Las Vegas, Nevada 89104
P: (702) 778-9444
F: (702) 778-9449
E: phil@mullinstrenchak.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LISA ZACCARIA, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>NEVADA RESTAURANT SERVICES, INC. dba DOTTY'S, a domestic corporation,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT**<br><br>**Causes of Action:**<br>1) **Discrimination based on disability (ADA)**<br>2) **Violation of the FMLA**<br>3) **Retaliation** |

## COMPLAINT

Plaintiff, LISA ZACCARIA (hereinafter "Plaintiff") by and through her attorney PHILIP J. TRENCHAK, Esq., of Mullins and Trenchak, Attorneys at Law, hereby brings suit against NEVADA RESTAURANT SERVICES, INC. dba DOTTY'S, doing business as a domestic corporation (hereinafter "NRSI"), inclusive, and avers and alleges as follows:

### JURISDICTION

1.  This is an action for damages arising under the Americans with Disabilities Act ("The ADA"), The Family Medical Leave Act ("The FMLA"), and ADA and/or FMLA retaliation.

2.  This Court has primary jurisdiction over claims set forth herein pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1343(a)(4)(civil rights action) and 42 U.S.C. §2000e-5(f)(3)(unlawful discrimination and retaliation in employment). This Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. §1367.

1

3. All material allegations relative to the named defendants contained in this Complaint are believed to have occurred in the State of Nevada, Clark County. Therefore, venue properly lies in the southern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDY

4. Plaintiff initiated the process of filing a Charge of Discrimination against her former employer, the Defendant named in this action, with the United States Equal Opportunity Commission ("EEOC") wherein she alleged discrimination on the basis of her ADA Rights, and retaliation as a continuing action. This was done within 300 days of the incident giving rise to this complaint.

5. Thereafter, Plaintiff's attorney received LISA ZACCARIA's Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission. Please see attached Exhibit A.

6. This action is being filed within 90 days of the EEOC "Right to Sue" Letter being received by Plaintiff. Therefore this action is timely.

7. Plaintiff has exhausted her administrative remedy on all claims pled hereunder prior to filing this action with this Court.

## PARTIES

8. Plaintiff is, and was at all times material to this action, an individual, residing in the State of Nevada, employed by Defendant.

9. Plaintiff is informed and believes, and thereupon alleges, that Defendant, NRSI, is and was at all times material to this action, duly authorized to transact, and in fact transacting business in the County of Clark, State of Nevada.

## GENERAL ALLEGATIONS

10. Plaintiff is informed and believes, and thereupon alleges, that on or about August 22, 2018, Plaintiff entered into employment with Defendant.

11. On or about September 16, 2016, Plaintiff began working for Defendant at NRSI as an Accounts Payable Manager.

12. On or about March 9, 2017 Plaintiff was diagnosed with Breast Cancer.

13. Plaintiff informed Human Resources of her condition.

2

14. Plaintiff was told that medical documentation was not necessary to establish leave under the FMLA because she was covered by the Americans with Disabilities Act.

15. Management and Human Resources pressured Plaintiff to tell her team.

16. Plaintiff was not offered FMLA paperwork on or around March 9, 2017.

17. On or about August 31, 2017 Plaintiff was working three (3) days a week in the office and two (2) days at home.

18. On or about October 18, 2017, Plaintiff was given FMLA Leave without being given any paperwork for her physicians to complete.

19. Human Resources and management completed the FMLA documents.

20. Plaintiff returned to work on or about March 5, 2018.

21. Human Resources did not request a clearance from Plaintiff's Doctor.

22. On or about March 6, 2018, Plaintiff's team member returned from a maternity leave and was terminated on this date as well.

23. Plaintiff was given a large task prior to a scheduled medical appointment on April 20, 2018 and Plaintiff politely explained that the appointment was medically necessary.

24. On or about April 24, 2018, Plaintiff received a write-up for leaving for her medical appointment.

25. The Human Resources Director assured Plaintiff that it was not necessary, and that the write-up would be expunged from her record.

26. On or about April 24, 2018, Plaintiff inquired of HR as to whether or not she needed a Doctor's Note for her FMLA Leave, HR explained to Plaintiff that she was covered pursuant to the Reasonable Accommodation requirements under the ADA under the FMLA.

27. Plaintiff was unsure of HR's explanation so she sent a confirmation email regarding her FMLA days which were utilized and those which remained.

3

28. On or about April 27, 2018, Plaintiff was told that if she did not work six (6) hours per day that a full eight (8) hour shift would be deducted from her FMLA available time.

29. The write-up of April 24, 2018 remained on Plaintiff's record.

30. On or about April 29, 2018, Plaintiff was given additional work tasks in spite of the fact that she was working less due to her FMLA leave.

31. On or about April 29, 2018, Plaintiff spoke to Human Resources because she felt overwhelmed by her job duties.

32. In essence, Plaintiff was asking for a Reasonable Accommodation so that she could perform the necessary job tasks at hand, given her disability and the limitations that her disability had caused.

33. Plaintiff was not given ADA Reasonable Accommodation paperwork at that time, and only found out that the paperwork was available prior to the date she was terminated.

34. On or about April 30, 2018, Plaintiff submitted FMLA paperwork from her primary physician and her oncologist and these FMLA documents were approved by HR.

35. On or about April 30, 2018, Plaintiff received an email from HR containing the 2017 FMLA forms, which were completed by HR, without any participation from Plaintiff or her physicians.

36. On or about May 7, 2018, Plaintiff asked the Assistant Controller (AC) for assistance in performing work tasks given the limitations that her life altering disability had created for her.

37. The AC simply informed Plaintiff she needed to get the work completed in a timely fashion without any offer of a reasonable accommodation.

38. On or about May 8, 2018, Plaintiff met with the AC to discuss concerns that she had concerning her supervisor attempting to go around company policy.

39. Plaintiff stated to the AC, that it is extremely difficult for her to complete extra/additional work tasks during her chemotherapy treatments and radiation therapy.

4

40. The AC offered to discuss the matter further during the following week but this never occurred.

41. On or about May 9, 2018, Plaintiff spoke with the AC about being inundated with work, and requiring a reasonable accommodation to accomplish her work and further stated that her FMLA mandates that she only work a maximum of eight (8) hours per day which was not being adhered to by Defendant.

42. The AC offered very little assistance.

43. The Director of HR was asked questions regarding the suggestions the AC made, and the Director of HR contradicted each suggestion.

44. Plaintiff requested assistance in dealing with the uncompromising demands that the AC was putting on her and her team, in spite of her disability, and no assistance was offered.

45. On or about May 10, 2018 an employee was rushed to the hospital to give birth and another employee accompanied her.

46. The CFO forced Plaintiff to contact the accompanying employee to explain that if she did not return to work she would be written up.

47. Between May 17, 2018 and May 29, 2018, Plaintiff's FMLA paperwork was submitted by her physicians and then approved by HR.

48. On or about May 30, 2018 Plaintiff sent an email to HR that she needed to take an FMLA day and the company continued to contact her throughout the remainder of that day.

49. Plaintiff consistently emailed, and had discussions with HR regarding issues with FMLA and reasonable accommodation requests.

50. On July 26, 2018, Plaintiff's department lost an employee and Plaintiff was told by management to "deal with it."

51. Plaintiff again informed management of her illness, her FMLA, and made an informal

request for a reasonable accommodation and no assistance was offered.

52. On or about August 13, 2018 Plaintiff was admitted to the hospital for an infection and underwent surgery on August 15, 2018.

53. On or about August 20, 2018, Plaintiff noticed that her FMLA paperwork had expired.

54. The HR Representative explains that "it does not matter."

55. On or about August 20, 2018, the HR Director took every Friday and counted it toward Plaintiff's FMLA Days, which was not the agreement they had reached and subsequently memorialized in emails.

56. The HR Director explained that anything under six (6) hours of work in a day would count as an FMLA Day.

57. Plaintiff discussed this with the Department of Labor, and was told this calculation was not valid pursuant to the FMLA.

58. On or about August 21, 2018, additional FMLA paperwork was submitted to HR and approved.

59. On or about August 23, 2018, Plaintiff dropped off additional FMLA to HR.

60. The HR Director exclaimed "Why do you need medical leave?"

61. This was a private medical question but Plaintiff answered to attempt to find a peaceful resolution.

62. Plaintiff explained she had been hospitalized due to a red hot spot on her left breast.

63. Plaintiff sent a picture to her doctor and the doctor ordered her to the UMC Emergency Room.

64. Plaintiff was admitted, given antibiotics, and was taken into surgery.

65. The HR Director persisted and stated "Why?"

66. Plaintiff went on to explain her private medical condition to an extremely angry HR

6

Director.

67. Plaintiff went on to discuss the fact that the FMLA Leave was being unfairly calculated.

68. The HR Director stated that they would address it at a later date which never occurred.

69. On or about August 23, 2018 a Supervisor stated that the HR Director and CFO asked her "if it was better or worse with Plaintiff in the office."

70. Plaintiff felt that this was in response to the submission of her FMLA paperwork.

71. On or about August 30, 2018 Plaintiff was emailed regarding a pay adjustment to hourly wages.

72. On or about October 9, 2018, Plaintiff had to take new FMLA forms to her physician as Defendant's HR department had supplied Plaintiff with expired FMLA paperwork.

73. On or about October 22, 2018, Plaintiff's FMLA paperwork was submitted and approved by HR.

74. On or about October 29, 2018, the CFO and Plaintiff exchanged emails regarding Plaintiff's issues with FMLA, her persisting ADA informal requests, and the fact that Plaintiff's department is down two (2) employees which has increased the work load exponentially.

75. No assistance was provided.

76. On or about December 3, 2018, an Email exchange between HR and Plaintiff occurred wherein Plaintiff was placed on hourly wages.

77. Plaintiff requested a letter from HR to document that the CFO was putting Plaintiff on an hourly wage schedule so that she could submit it to her treating physicians.

78. Plaintiff felt that this hourly wage re-classification was punishment for using FMLA leave and for requesting assistance in performing her job duties.

79. Plaintiff was also told that she could not work from home.

80. HR never responded.

7

81. On or about December 4, 2018, the CFO and AC explained that they would now be cutting Plaintiff's hours for time not worked.

82. Plaintiff explained the issues at work, including employee turnover, abundance of work, and limited days while Plaintiff was out on FMLA leave.

83. The CFO explained that he was going to cut Plaintiff's pay and not pay her for hours not worked.

84. This statement conflicted with what the HR Director had explained about Plaintiff being a salaried employee and the FMLA.

85. The CFO's statement also contradicted with Plaintiff's agreed upon salary.

86. Plaintiff explained that she had been undergoing intensive cancer treatments and that she had asked for help in completing work tasks which was never rendered by Defendant.

87. Plaintiff sent emails to HR requesting clarification as to "docked pay" and no responses were returned by HR.

88. On or about December 10, 2018, Plaintiff went directly to HR and asked for documents in writing which were not provided pertaining to the change to hourly, PTO and OT, and how that would work.

89. Plaintiff also advised HR that she was feeling pressure to be released from her Doctor's care by management.

90. Plaintiff informed HR that she had the same workload in spite of the reduced hours and reduced pay and has never been offered a reasonable accommodation.

91. On or about December 10, 2019, Plaintiff went to the HR Director and asked if she was going to answer Plaintiff's emails concerning being placed on hourly wages.

92. The HR Director stated that she had no intention of answering those emails because it would look as though they were forcing the hours on the Plaintiff.

93. The HR Director went on to explain that Plaintiff would be docked the hours she was not able to work.

94. The Plaintiff was also told by the HR Director, that Plaintiff had to discuss these issues with the CFO because he was in control of all of these issues.

95. On or about December 18, 2018, Plaintiff spoke to the CFO and asked him to put the hourly rate into a memorialized writing.

96. The CFO explained that her position was forty plus (40+) per week and that a person that is able to work those hours is needed for the position.

97. Plaintiff explained to the CFO that she was not planning on becoming ill, that she has worked from home, that she has worked through chemotherapy treatment, and requested assistance in performing her job tasks, turnover was experienced and worked through, and Plaintiff and her team did everything in their power to work through it.

98. The CFO would not explain exactly how Plaintiff would be paid.

99. The CFO placed Plaintiff on hourly wages until her treating physician took her off of Physical Therapy and issued a note on or about August 21, 2019.

100. On or about October 1, 2019, the AC informed Plaintiff that management was asking why Plaintiff was on FMLA.

101. That AC informed Plaintiff that she told them it was for medical reasons.

102. Plaintiff sent a Complaint to HR informing HR of what had occurred.

103. On or about October 10, 2019, Plaintiff submitted additional paperwork to HR.

104. Plaintiff was inundated with additional work and pled with management for additional assistance and no assistance was offered.

105. On or about November 11, 2019, Plaintiff submitted additional FMLA paperwork stating that Plaintiff could work no more than nine (9) hours per shift.

106. On or about November 11, 2019, Plaintiff was written up for not completing assignments and other employees were instructed not to assist Plaintiff.

107. On or about November 14, 2019, Plaintiff was badgered about not completing assignments, and additional issues by Managers.

108. Plaintiff explained she had not been given assistance, and she was working beyond her FMLA maximum time allotment.

109. On or about November 20, 2019, Plaintiff was written up for not completing a task that another employee also did not complete.

110. The other employee did not receive a write-up, but Plaintiff did.

111. These issues were memorialized in an email to HR.

112. On or about November 20, 2019, another email was sent to HR about the issues with FMLA and Plaintiff's lack of reasonable accommodations despite requesting accommodations for almost two (2) years and Defendant failing to react in any manner aside from piling on more work and pushing deadlines.

113. A third email was sent to HR on November 20, 2019, and this sparked a personal visit from the manager addressed in the email.

114. No responses were ever received to any of the three (3) emails sent on November 20, 2018.

115. FMLA paperwork was sent by Plaintiff to HR again specifying that nine (9) hours per day was Plaintiff's maximum given her health constraints.

116. On or about November 27, 2019 additional work was placed upon Plaintiff's department and it could not be performed timely and management was fully aware of the situation.

117. A manager would consistently berate Plaintiff in front of other employees and demand impossible production on systems that no one had experience with.

118. On or about December 12, 2019 Plaintiff was placed on a Performance Improvement Plan

(PIP) for thirty (30) days which was also referred to as a "last and final" warning.

119. The PIP was very ambiguous but no further details were forthcoming.

120. Plaintiff requested further details on the PIP and Management refused to comply with her requests.

121. On or about December 19, 2019, Plaintiff emailed HR about the PIP and no response was ever received.

122. On or about December 23, 2019, Plaintiff discussed issues with Management that needed to be addressed regarding completing work assignments.

123. Management refused to discuss the issues.

124. On December 23, 2019, Plaintiff finally received a response from HR and was told to do a flow chart of reorganization of the department.

125. Plaintiff informed HR that year end issues would make that impossible until some time in January.

126. On or about December 24, 2019, Plaintiff requested Short Term Disability forms from HR to have a medically necessary surgery related to her disability that Defendant had been informed about.

127. On or about December 31, 2019, Plaintiff had a meeting with HR.

128. During the meeting, Plaintiff brought up the FMLA and the ADA.

129. Plaintiff believes that this meeting was audio-recorded.

130. Plaintiff asked why she was not being accommodated by limiting her shifts to nine (9) hours per day at a maximum as outlined by her doctors in her FMLA paperwork.

131. Plaintiff also stated that additional tasks are regularly added which makes completion of those tasks within a nine (9) hour window an impossibility.

132. HR suggested that Plaintiff could pick up on the task on the next business day after completing a nine (9) hour shift.

133. Plaintiff explained that this was not possible given the demands of management and that she has continually explained these issues to management without any assistance offered whatsoever.

134. That Management was concerned with deadlines and was not concerned with Plaintiff's medical issues.

135. HR explained to Plaintiff that she had a right to file a complaint about the offending managers, which was completed by Plaintiff, and subsequently no response was received.

136. HR was told by Plaintiff, that the PIP was given to her as a result of retaliation for FMLA Leave and ADA Reasonable Accommodation Requests.

137. HR, informed Plaintiff, that she needed ADA Reasonable Accommodation Request forms which was the first time she had been told this by any Representative of NRSI.

138. Plaintiff had been told that she was covered under the ADA because of her FMLA.

139. Plaintiff requested the forms and immediately took them to all of her physicians.

140. Plaintiff sent e-mails to HR explaining that it would take a week to get each form completed by the respective doctors.

141. The ADA forms were returned to HR approximately a week prior to Plaintiff's termination.

142. Plaintiff was terminated on or about January 13, 2020 for allegedly not meeting the terms of her PIP.

143. Plaintiff suffered additional damages set forth in this Amended Complaint.

### FIRST CAUSE OF ACTION
**(Discrimination Based on Disability in violation of State and Federal Statutes)**

144. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

145. Plaintiff is a member of the class of persons protected by state and federal statutes

prohibiting discrimination based on Disability.

146. Plaintiff is a qualified individual, fully able to perform her job tasks.

147. Plaintiff informed Defendant that she had a disability and that it was affecting her job.

148. Plaintiff is a qualified individual with a disability that is able to perform the essential functions of her job with a reasonable accommodation.

149. Defendant was aware of the disability but never offered a reasonable accommodation and did not engage in the interactive process with Plaintiff to help her to obtain a reasonable accommodation to assist her in performing the essential functions of her position.

150. Defendant did act as if reasonable accommodations would be made in support of her disability.

151. No reasonable accommodations were made even though Plaintiff made her employer aware that she has a disability that was affecting her work.

152. Defendant never engaged in the interactive process of attempting to obtain a reasonable accommodation for Ms. Zaccaria.

153. Defendant, as an employer is subject to Nevada and federal statutes prohibiting discrimination based upon Disability, NRS 613.330 et. seq. and the ADA et. seq. as amended and thus, has a legal obligation to provide Plaintiff and all employees a workplace free of unlawful discrimination based upon Disability.

154. Plaintiff informed Defendant she had a disability affecting a major life function.

155. Defendant refused to take reasonably adequate steps to prevent discrimination against Plaintiff, based upon Disability.

156. Plaintiff informed Defendant of her Disability and Defendant acted as though her work performance was therefore not an issue and gave Plaintiff a false sense of security that she was granted a Reasonable Accommodation.

157. No other similarly situated persons, not of Plaintiff's protected class, were subject to the same or substantially similar treatment.

158. Plaintiff suffered adverse economic impact including but not limited to loss of pay, benefits, expenses and other damages which will be more fully described at the time of trial.

159. Plaintiff was embarrassed, humiliated, angered and discouraged by the discriminatory actions taken against her.

160. Plaintiff suffered and continues to suffer compensable emotional and physical harm, including but not limited to, headaches, sleeplessness, anxiety and depression resulting from this unlawful discrimination by her employer.

161. Plaintiff is entitled to be fully compensated for her emotional disturbance by being forced to endure this discrimination.

162. Plaintiff is entitled to recover punitive damages for Defendant's malicious, intentional repeated violations of federal and state civil rights laws.

163. Plaintiff suffered damages in an amount to be deemed sufficient by a jury.

164. Plaintiff is entitled to an award of reasonable attorney's fees.

165. Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly and intentionally discriminated against Plaintiff because of her Disability.

166. Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

## SECOND CAUSE OF ACTION
## (VIOLATION OF THE FAMILY MEDICAL LEAVE ACT (FMLA))

167. Plaintiff repeats, re-alleges, and incorporates herein by reference, the allegations contained in the foregoing paragraphs as though fully set forth herein.

168. The Family and Medical Leave Act applies to employers that meet the following requirements:

   a. Employees at companies with 50 or more employees who work within 75 miles of the primary work site.

  b. Employees must have worked at the company for at least 12 months (for at least 1,250 hours in those 12 months) before they can take leave under FMLA.

169. Plaintiff did work for the Plaintiff beginning on September 16, 2016.

170. Plaintiff was unlawfully terminated on January 13, 2020.

171. Plaintiff was employed for longer than twelve (12) months at the time of her unlawful termination.

172. Defendant also has an excess of fifty (50) employees.

173. Plaintiff was therefore entitled to leave under the Family and Medical Leave Act.

174. When an employee requests FMLA leave or the employer acquires knowledge that leave may be for a FMLA purpose, the employer must notify the employee of his or her eligibility to take leave, and inform the employee of his or her rights and responsibilities under the FMLA.

175. When the employer has enough information to determine that leave is being taken for a FMLA-qualifying reason, the employer must notify the employee that the leave is designated and will be counted as FMLA leave.

176. Plaintiff's FMLA rights were repeatedly violated as outlined above.

177. Plaintiff was legally entitled to FMLA Leave and Defendant knew that there was an underlying medical reason for the FMLA Leave given the medical documentation that was provided by Plaintiff to Defendant.

178. Plaintiff was required to retain counsel to prosecute this FMLA violation cause of action and is entitled to an award of reasonable attorney's fees and costs.

### THIRD CAUSE OF ACTION
**(Retaliation under Federal Law, 42 U.S.C. § 2000e-3 and Nevada State Law, NRS 613.340)**

179. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

180. In violation of 42 U.S.C § 2000e-3, Defendant retaliated against Plaintiff after she informed Human Resources Representatives that she had a disability and/or that she was being targeted for harassment by management due to her ADA Reasonable Accommodation Requests and her repeated complaints to HR regarding violations of her FMLA rights.

181. In violation of NRS 613.340 Defendant retaliated against Plaintiff after she informed her employer on multiple occasions that she herself had a disability and that she needed her FMLA to be followed as written by her treating physicians.

182. The behavior complained of also constitutes retaliatory discrimination.

183. There may be more detrimental acts of which Plaintiff is unaware which may also constitute retaliation in that it harmed Plaintiff in her workplace.

184. The aforementioned actions and conduct by Defendant constitutes illegal retaliation which is prohibited by federal and state statutes.

185. Plaintiff has been seriously harmed, economically and emotionally by this unlawful retaliation and she is entitled to be fully compensated therefor.

186. Plaintiff had to engage the services of attorneys for representation in this matter and is entitled to an award of reasonable attorney's fees.

**WHEREFORE**, Plaintiff prays for relief against Defendants, each of them, as follows:

### ON ALL CAUSES OF ACTION

1. For compensatory damages in the principal amount in excess of seventy-five thousand dollars ($75,000.00) to be proven at trial;

2. For punitive damages in the principal amount in excess of seventy-five thousand dollars ($75,000.00) to be proven at trial;

3. For special damages in the principal amount in excess of seventy-five thousand dollars, ($75,000.00) to be proven at trial;

4. For attorney's fees and costs incurred;

5. For all damages in an amount to be proved at trial;

6. For costs of suit herein incurred;

7. For reasonable interest on amounts due; and

///
///
///

8. For any such other and further relief as this Court deems just and proper.

DATED this 15th day of May, 2020.

                    **MULLINS & TRENCHAK, ATTORNEYS AT LAW**

                    /s/ *signature*

                    Philip J. Trenchak, Esq.
                    Nevada Bar No. 009924
                    Mullins & Trenchak, Attorneys at Law
                    1614 S. Maryland Parkway
                    Las Vegas, NV 89104

## PLAINTIFF'S JURY DEMAND

Plaintiff, LISA ZACCARIA by and through her attorneys of record, PHILIP J. TRENCHAK, ESQ. of the law firm MULLINS & TRENCHAK, ATTORNEYS AT LAW, respectfully submits this Demand for Jury pursuant FRCP 38 in the above captioned matter.

DATED this 15th day of May 2020.

**MULLINS & TRENCHAK, ATTORNEYS AT LAW**

_____
PHILIP J. TRENCHAK, ESQ.
Nevada State Bar No. 009924
1614 S. Maryland Parkway
Las Vegas, Nevada 89104
P: (702) 778-9444
F: (702) 778-9449
E: phil@mullinstrenchak.com
E: victoria@mullinstrenchak.com
Attorneys for Plaintiff

# **Exhibit A**
Right to Sue Notice

EEOC Form 161-B (11/16)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Lisa Zaccaria<br>9540 Ruby Hills Drive<br>Las Vegas, NV 89134 | From: | Las Vegas Local Office<br>333 Las Vegas Blvd South<br>Suite 5560<br>Las Vegas, NV 89101 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 487-2020-00538 | Donna M. Cutley,<br>Investigator | (702) 388-6908 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

Patricia A. Kane,
Acting Director

FEB 14 2020
*(Date Mailed)*

Enclosures(s)

cc:
Phillip Trenchak, Esq.
MULLINS & TRENCHAK, ATTORNEY AT LAW
1514 South Maryland Parkway
Las Vegas, NV 89104

Human Resources Director
Nevada Restaurant Services
3465 Losee Road
North Las Vegas, NV 89030